Justice Thomas
delivered the opinion of the Court.
Kansas law provides that if a unanimous jury finds that aggravating circumstances are not outweighed by mitigating circumstances, the death penalty shall be imposed. Kan. Stat. Ann. § 21-4624(e) (1995). We must decide whether this statute, which requires the imposition of the death penalty *166 when the sentencing jury determines that aggravating evidence and mitigating evidence are in equipoise, violates the Constitution. We hold that it does not.
I
Respondent Michael Lee Marsh II broke into the home of Marry Ane Pusch and lay in wait for her to return. When Marry Ane entered her home with her 19-month-old daughter, M. P., Marsh repeatedly shot Marry Ane, stabbed her, and slashed her throat. The home was set on fire with the toddler inside, and M. P. burned to death.
The jury convicted Marsh of the capital murder of M. P., the first-degree premeditated murder of Marry Ane, aggravated arson, and aggravated burglary. The jury found beyond a reasonable doubt the existence of three aggravating circumstances, and that those circumstances were not outweighed by any mitigating circumstances. On the basis of those findings, the jury sentenced Marsh to death for the capital murder of M. P. The jury also sentenced Marsh to life imprisonment without possibility of parole for 40 years for the first-degree murder of Marry Ane, and consecutive sentences of 51 months’ imprisonment for aggravated arson and 34 months’ imprisonment for aggravated burglary.
On direct appeal, Marsh challenged §21-4624(e), which reads:
“If, by unanimous vote, the jury finds beyond a reasonable doubt that one or more of the aggravating circumstances enumerated in K. S. A. 21-4625 . . . exist and, further, that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant shall be sentenced to death; otherwise, the defendant shall be sentenced as provided by law.”
Focusing on the phrase “shall be sentenced to death,” Marsh argued that § 21-4624(e) establishes an unconstitutional pre *167 sumption in favor of death because it directs imposition of the death penalty when aggravating and mitigating circumstances are in equipoise.
The Kansas Supreme Court agreed, and held that the Kansas death penalty statute, § 21-4624(e), is facially unconstitutional. 278 Kan. 520, 534-535, 102 P. 3d 445, 458 (2004). The court concluded that the statute’s weighing equation violated the Eighth and Fourteenth Amendments of the United States Constitution because, “[i]n the event of equipoise, i. e., the jury’s determination that the balance of any aggravating circumstances and any mitigating circumstances weighed equal, the death penalty would be required.” Id., at 534, 102 P. 3d, at 457. The Kansas Supreme Court affirmed Marsh’s conviction and sentence for aggravated burglary and premeditated murder of Marry Ane, and reversed and remanded for new trial Marsh’s convictions for capital murder of M. P. and aggravated arson.[1] We granted certiorari, 544 U. S. 1060 (2005), and now reverse the Kansas Supreme Court’s judgment that Kansas’ capital sentencing statute, Kan. Stat. Ann. §21-4624(e), is facially unconstitutional.
II
In addition to granting certiorari to review the constitutionality of Kansas’ capital sentencing statute, we also directed the parties to brief and argue: (1) whether we have jurisdiction to review the judgment of the Kansas Supreme Court under 28 U. S. C. § 1257, as construed by Cox Broadcasting Corp. v. Cohn, 420 U. S. 469 (1975); and (2) whether the Kansas Supreme Court’s judgment is supported by adequate state grounds independent of federal law. 544 U. S. 1060. Having considered the parties’ arguments, we con- *168 elude that we have jurisdiction in this case and that the constitutional issue is properly before the Court.
A
Title 28 U. S. C. § 1257 authorizes this Court to review, by writ of certiorari, the final judgment of the highest court of a State when the validity of a state statute is questioned on federal constitutional grounds. This Court has determined that the foregoing authorization permits review of the judgment of the highest court of a State, even though the state-court proceedings are not yet complete, “where the federal claim has been finally decided, with further proceedings on the merits in the state courts to come, but in which later review of the federal issue cannot be had, whatever the ultimate outcome of the case.” Cox Broadcasting, supra, at 481.
Here, although Marsh will be retried on the capital murder and aggravated arson charges, the Kansas Supreme Court’s determination that Kansas’ death penalty statute is facially unconstitutional is final and binding on the lower state courts. Thus, the State will be unable to obtain further review of its death penalty law later in this case. If Marsh is acquitted of capital murder, double jeopardy and state law will preclude the State from appealing. If he is reconvicted, the State will be prohibited under the Kansas Supreme Court’s decision from seeking the death penalty, and there would be no opportunity for the State to seek further review of that prohibition. Although Marsh argues that a provision of the Kansas criminal appeals statute, Kan. Stat. Ann. § 22-3602(b) (2003 Cum. Supp.), would permit the State to appeal the invalidation of Kansas’ death penalty statute, that contention is meritless. That statute provides for limited appeal in only four enumerated circumstances, none of which apply here. . We have deemed lower court decisions final for 28 U. S. C. § 1257 purposes in like circumstances, see Florida v. Meyers, 466 U. S. 380 (1984) (per curiam); South Dakota *169 v. Neville, 459 U. S. 553 (1983); New York v. Quarles, 467 U. S. 649 (1984), and do so again here.
B
Nor is the Kansas Supreme Court’s decision supported by adequate and independent state grounds. Marsh maintains that the Kansas Supreme Court’s decision was based on the severability of § 21-4624(e) under state law, and not the constitutionality of that provision under federal law, the latter issue having been resolved by the Kansas Supreme Court in State v. Kleypas, 272 Kan. 894, 40 P. 3d 139 (2001) (per curiam). Marsh’s argument fails.
Kleypas, itself, rested on federal law. See id., at 899-903, 40 P. 3d, at 166-167. In rendering its determination here, the Kansas Supreme Court observed that Kleypas, “held that the weighing equation in K. S. A. 21-4624(e) as written was unconstitutional under the Eighth and Fourteenth Amendments” as applied to cases in which aggravating evidence and mitigating evidence are equally balanced. 278 Kan., at 534, 102 P. 3d, at 457. In this case, the Kansas Supreme Court chastised the Kleypas court for avoiding the constitutional issue of the statute’s facial validity, squarely held that §21-4624(e) is unconstitutional on its face, and overruled the portion of Kleypas upholding the statute through the constitutional avoidance doctrine and judicial revision. 278 Kan., at 534-535, 539-542, 102 P. 3d, at 458, 462. As in Kleypas, the Kansas Supreme Court clearly rested its decision here on the Eighth and Fourteenth Amendments to the United States Constitution. We, therefore, have jurisdiction to review its decision. See Michigan v. Long, 463 U. S. 1032, 1040-1041 (1983).
Ill
This ease is controlled by Walton v. Arizona, 497 U. S. 639 (1990), overruled on other grounds, Ring v. Arizona, 536 U. S. 584 (2002). In that case, a jury had convicted Walton *170 of a capital offense. At sentencing, the trial judge found the existence of two aggravating circumstances and that the mitigating circumstances did not call for leniency, and sentenced Walton to death. 497 U. S., at 645. The Arizona Supreme Court affirmed, and this Court granted certiorari to resolve the conflict between the Arizona Supreme Court’s decision in State v. Walton, 159 Ariz. 571, 769 P. 2d 1017 (1989) (en banc) (holding the Arizona death penalty statute constitutional), and the Ninth Circuit’s decision in Adamson v. Ricketts, 865 F. 2d 1011, 1043-1044 (1988) (en banc) (finding the Arizona death penalty statute unconstitutional because, “in situations where the mitigating and aggravating circumstances are in balance, or, where the mitigating circumstances give the court reservation but still fall below the weight of the aggravating circumstances, the statute bars the court from imposing a sentence less than death”). See Walton, supra, at 647.
Consistent with the Ninth Circuit’s conclusion in Adam-son, Walton argued to this Court that the Arizona capital sentencing system created an unconstitutional presumption in favor of death because it “tells an Arizona sentencing judge who finds even a single aggravating factor, that death must be imposed, unless—as the Arizona Supreme Court put it in Petitioner’s case—there are ‘outweighing mitigating factors.’” Brief for Petitioner in Walton v. Arizona, O. T. 1989, No. 88-7351, p. 33; see also id., at 34 (arguing that the statute is unconstitutional because the defendant “ ‘must. .. bear the risk of nonpersuasion that any mitigating circumstance will not outweigh the aggravating circumstance’ ” (alteration omitted)). Rejecting Walton’s argument, see 497 U. S., at 650, 651, this Court stated:
“So long as a State’s method of allocating the burdens of proof does not lessen the State’s burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant’s constitutional rights are not violated by placing on *171 him the burden of proving mitigating circumstances sufficiently substantial to call for leniency.” Id., at 650.
This Court noted that, as a requirement of individualized sentencing, a jury must have the opportunity to consider all evidence relevant to mitigation, and that a state statute that permits a jury to consider any mitigating evidence comports with that requirement. Id., at 652 (citing Blystone v. Pennsylvania, 494 U. S. 299, 307 (1990)). The Court also pointedly observed that while the Constitution requires that a sentencing jury have discretion, it does not mandate that discretion be unfettered; the States are free to determine the manner in which a jury may consider mitigating evidence. 497 U. S., at 652 (citing Boyde v. California, 494 U. S. 370, 374 (1990)). So long as the sentencer is not precluded from considering relevant mitigating evidence, a capital sentencing statute cannot be said to impermissibly, much less automatically, impose death. 497 U. S., at 652 (citing Woodson v. North Carolina, 428 U. S. 280 (1976) (plurality opinion), and Roberts v. Louisiana, 428 U. S. 325 (1976) (plurality opinion)). Indeed, Walton suggested that the only capital sentencing systems that would be impermissibly mandatory were those that would “automatically impose death upon conviction for certain types of murder.” 497 U. S., at 652.
Contrary to Marsh’s contentions and the Kansas Supreme Court’s conclusions, see 278 Kan., at 536-538, 102 P. 3d, at 459, the question presented in the instant case was squarely before this Court in Walton. Though, as Marsh notes, the Walton Court did not employ the term “equipoise,” that issue undeniably gave rise to the question this Court sought to resolve, and it was necessarily included in Walton’s argument that the Arizona system was unconstitutional because it required the death penalty unless the mitigating circumstances outweighed the aggravating circumstances. See swpra, at 170. Moreover, the dissent in Walton reinforces what is evident from the opinion and the judgment of the Court—that the equipoise issue was before the Court, and *172 that the Court resolved the issue in favor of the State. Indeed, the “equipoise” issue was, in large measure, the basis of the Walton dissent. See 497 U. S., at 687-688 (opinion of Blackmun, J.) (“If the mitigating and aggravating circumstances are in equipoise, the [Arizona] statute requires that the trial judge impose capital punishment. The assertion that a sentence of death may be imposed in such a case runs directly counter to the Eighth Amendment requirement that a capital sentence must rest upon a 'determination that death is the appropriate punishment in a specific case’”). Thus, although Walton did not discuss the equipoise issue explicitly, that issue was resolved by its holding. Cf. post, at 199-200 (Stevens, J., dissenting); cf. also post, at 203-204, n. 1 (Souter, J., dissenting).
Our conclusion that Walton controls here is reinforced by the fact that the Arizona and Kansas statutes are comparable in important respects. Similar to the express language of the Kansas statute, the Arizona statute at issue in Walton has been consistently construed to mean that the death penalty will be imposed upon a finding that aggravating circumstances are not outweighed by mitigating circumstances.[2] See State v. Ysea, 191 Ariz. 372, 375, 956 P. 2d 499, 502 (1998) (en banc); State v. Gretzler, 135 Ariz. 42, 55, 659 P. 2d 1, 14 (1983) (in banc); Adamson, supra, at 1041-1043. Like the Kansas statute, the Arizona statute places the burden of proving the existence of aggravating circumstances on the State, and both statutes require the defendant to proffer mitigating evidence.
*173 The statutes are distinct in one respect. The Arizona statute, once the State has met its burden, tasks the defendant with the burden of proving sufficient mitigating circumstances to overcome the aggravating circumstances and that a sentence less than death is therefore warranted. In contrast, the Kansas statute requires the State to bear the burden of proving to the jury, beyond a reasonable doubt, that aggravators are not outweighed by mitigators and that a sentence of death is therefore appropriate; it places no additional evidentiary burden on the capital defendant. This distinction operates in favor of Kansas capital defendants. Otherwise the statutes function in substantially the same manner and are sufficiently analogous for our purposes. Thus, Walton is not distinguishable from the instant case.
Accordingly, the reasoning of Walton requires approval of the Kansas death penalty statute. At bottom, in Walton, the Court held that a state death penalty statute may place the burden on the defendant to prove that mitigating circumstances outweigh aggravating circumstances. A fortiori, Kansas’ death penalty statute, consistent with the Constitution, may direct imposition of the death penalty when the State has proved beyond a reasonable doubt that mitigators do not outweigh aggravators, including where the aggravating circumstances and mitigating circumstances are in equipoise.
IV
A
Even if, as Marsh contends, Walton does not directly control, the general principles set forth in our death penalty jurisprudence would lead us to conclude that the Kansas capital sentencing system is constitutionally permissible. Together, our decisions in Furman v. Georgia, 408 U. S. 238 (1972) (per curiam), and Gregg v. Georgia, 428 U. S. 153 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.), establish that a state capital sentencing system must: *174 (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant’s record, personal characteristics, and the circumstances of his crime. See id., at 189. So long as a state system satisfies these requirements, our precedents establish that a State enjoys a range of discretion in imposing the death penalty, including the manner in which aggravating and mitigating circumstances are to be weighed. See Franklin v. Lynaugh, 487 U. S. 164, 179 (1988) (plurality opinion) (citing Zant v. Stephens, 462 U. S. 862, 875-876, n. 13 (1983)).
The use of mitigation evidence is a product of the requirement of individualized sentencing. See Graham v. Collins, 506 U. S. 461, 484-489 (1993) (Thomas, J., concurring) (discussing the development of mitigation precedent). In Lockett v. Ohio, 438 U. S. 586, 604 (1978), a plurality of this Court held that “the Eighth and Fourteenth Amendments require that the sentencer .. . not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” (Emphasis in original.) The Court has held that the sentencer must have full access to this “ ‘highly relevant’ ” information. Id., at 603 (quoting Williams v. New York, 337 U. S. 241, 247 (1949); alteration omitted). Thus, in Lockett, the Court struck down the Ohio death penalty statute as unconstitutional because, by limiting a jury’s consideration of mitigation to three factors specified in the statute, it prevented sentencers in capital cases from giving independent weight to mitigating evidence militating in favor of a sentence other than death. 438 U. S., at 604-605. Following Lockett, in Eddings v. Oklahoma, 455 U. S. 104 (1982), a majority of the Court held that a sentencer may not categorically refuse to consider any relevant mitigating evidence. Id., at 114; see also Skipper v. South Carolina, 476 U. S. 1, 3-4 (1986) (discussing Eddings).
*175 In aggregate, our precedents confer upon defendants the right to present sentencers with information relevant to the sentencing decision and oblige sentencers to consider that information in determining the appropriate sentence. The thrust of our mitigation jurisprudence ends here. “[W]e have never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.” Franklin, supra, at 179 (citing Zant, supra, at 875-876, n. 13). Rather, this Court has held that the States enjoy “ ‘a constitutionally permissible range of discretion in imposing the death penalty.’” Blystone, 494 U. S., at 308 (quoting McCleskey v. Kemp, 481 U. S. 279, 305-306 (1987)). See also 494 U. S., at 307 (stating that “[t]he requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence”); Graham, supra, at 490 (Thomas, J., concurring) (stating that “[o]ur early mitigating cases may thus be read as doing little more than safeguarding the adversary process in sentencing proceedings by conferring on the defendant an affirmative right to place his relevant evidence before the sentencer”).
B
The Kansas death penalty statute satisfies the constitutional mandates of Furman and its progeny because it rationally narrows the class of death-eligible defendants and permits a jury to consider any mitigating evidence relevant to its sentencing determination. It does not interfere, in a constitutionally significant way, with a jury’s ability to give independent weight to evidence offered in mitigation.
Kansas’ procedure narrows the universe of death-eligible defendants consistent with Eighth Amendment requirements. Under Kansas law, imposition of the death penalty is an option only after a defendant is convicted of capital murder, which requires that one or more specific elements beyond intentional premeditated murder be found. See *176 Kan. Stat. Ann. §21-3439. Once convicted of capital murder, a defendant becomes eligible for the death penalty only if the State seeks a separate sentencing hearing, §§21-4706(c) (2003 Cum. Supp.), 21-4624(a); App. 23 (Instruction No. 2), and proves beyond a reasonable doubt the existence of one or more statutorily enumerated aggravating circumstances. Kan. Stat. Ann. §§ 21-4624(c), (e), and 21-4625; App. 24 (Instruction No. 3).
Consonant with the individualized sentencing requirement, a Kansas jury is permitted to consider any evidence relating to any mitigating circumstance in determining the appropriate sentence for a capital defendant, so long as that evidence is relevant. §21-4624(c). Specifically, jurors are instructed:
“A mitigating circumstance is that which in fairness or mercy may be considered as extenuating or reducing the degree of moral culpability or blame or which justify a sentence of less than death, although it does not justify or excuse the offense. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case.
“The appropriateness of the exercise of mercy can itself be a mitigating factor you may consider in determining whether the State has proved beyond a reasonable doubt that the death penalty is warranted.” Id., at 24 (Instruction No. 4).[3]
Jurors are then apprised of, but not limited to, the factors that the defendant contends are mitigating. Id., at 25-26. They are then instructed that “[e]ach juror must consider every mitigating factor that he or she individually finds to exist.” Id., at 26.
*177 Kansas’ weighing equation, ibid. (Instruction No. 5), merely channels a jury’s discretion by providing it with criteria by which it may determine whether a sentence of life or death is appropriate. The system in Kansas provides the type of “ ‘guided discretion,’ ” Walton, 497 U. S., at 659 (citing Gregg, 428 U. S., at 189), we have sanctioned in Walton, Boyde, and Blystone.
Indeed, in Boyde, this Court sanctioned a weighing jury instruction that is analytically indistinguishable from the Kansas jury instruction under review today. The Boyde jury instruction read:
“‘If you conclude that the aggravating circumstances outweigh the mitigating circumstances, you shall impose a sentence of death. However, if you determine that the mitigating circumstances outweigh the aggravating circumstances, you shall impose a sentence of confinement in the state prison for life without the possibility of parole.’” 494 U. S., at 374 (emphasis in original).
Boyde argued that the mandatory language of the instruction prevented the jury from rendering an individualized sentencing determination. This Court rejected that argument, concluding that it was foreclosed by Blystone, where the Court rejected a nearly identical challenge to the Pennsylvania death penalty statute. 494 U. S., at 307.[4] In so holding, this Court noted that the mandatory language of the statute did not prevent the jury from considering all relevant mitigating evidence. Boyde, supra, at 374. Similarly here, § 21-4624(e) does not prevent a Kansas jury from considering mitigating evidence. Marsh’s argument that the *178 Kansas provision is impermissibly mandatory is likewise foreclosed.[5]
Contrary to Marsh’s argument, §21-4624(e) does not create a general presumption in favor of the death penalty in the State of Kansas. Rather, the Kansas capital sentencing system is dominated by the presumption that life imprisonment is the appropriate sentence for a capital conviction. If the State fails to meet its burden to demonstrate the existence of an aggravating circumstance(s) beyond a reasonable doubt, a sentence of life imprisonment must be imposed. Ibid.; App. 27 (Instruction No. 10). If the State overcomes this hurdle, then it bears the additional burden of proving beyond a reasonable doubt that aggravating circumstances are not outweighed by mitigating circumstances. Ibid. (Instruction No. 10); id., at 26 (Instruction No. 5). Significantly, although the defendant appropriately bears the burden of proffering mitigating circumstances—a burden of production—he never bears the burden of demonstrating that mitigating circumstances outweigh aggravating circumstances. Instead, the State always has the burden of demonstrating that mitigating evidence does not outweigh *179 aggravating evidence. Absent the State’s ability to meet that burden, the default is life imprisonment. Moreover, if the jury is unable to reach a unanimous decision—in any respect—a sentence of life must be imposed. §21-4624(c); App. 28 (Instruction No. 12). This system does not create a presumption that death is the appropriate sentence for capital murder.[6]
Nor is there any force behind Marsh’s contention that an equipoise determination reflects juror confusion or inability to decide between life and death, or that a jury may use equipoise as a loophole to shirk its constitutional duty to render a reasoned, moral decision, see California v. Brown, 479 U. S. 588, 545 (1987) (O’Connor, J., concurring), regarding whether death is an appropriate sentence for a particular defendant. Such an argument rests on an implausible characterization of the Kansas statute—that a jury’s determination that aggravators and mitigators are in equipoise is not a decision, much less a decision for death—and thus misses the mark. Cf. post, at 206-207 (Souter, J., dissenting) (arguing that Kansas’ weighing equation undermines individualized sentencing). Weighing is not an end; it is merely a means to reaching a decision. The decision the jury must reach is whether life or death is the appropriate punishment. The Kansas jury instructions clearly inform the jury that a determination that the evidence is in equipoise is a decision for—not a presumption in favor of—death. Kansas jurors, presumed to follow their instructions, are made aware that: a determination that mitigators outweigh aggravators is a *180 decision that a life sentence is appropriate; a determination that aggravators outweigh mitigators or a determination that mitigators do not outweigh aggravators—including a finding that aggravators and mitigators are in balance—is a decision that death is the appropriate sentence; and an inability to reach a unanimous decision will result in a sentence of life imprisonment. So informed, far from the abdication of duty or the inability to select an appropriate sentence depicted by Marsh and Justice Souter, a jury’s conclusion that aggravating evidence and mitigating evidence are in equipoise is a decision for death and is indicative of the type of measured, normative process in which a jury is constitutionally tasked to engage when deciding the appropriate sentence for a capital defendant.
V

 The Kansas Supreme Court found that the trial court committed reversible error by excluding circumstantial evidence of third-party guilt connecting Eric Pusch, Marry Ane’s husband, to the crimes, and accordingly ordered a new trial on this ground. 278 Kan., at 528-533, 102 P. 3d, at 454-457.

 Arizona Rev. Stat. Ann. §13-703(E) (West Supp. 2005) provides:
“In determining whether to impose a sentence of death or life imprisonment, the trier of fact shall take into account the aggravating and mitigating circumstances that have been proven. The trier of fact shall impose a sentence of death if the trier of fact finds one or more of the aggravating circumstances enumerated in subsection F of this section and then determines that there are no mitigating circumstances sufficiently substantial to call for leniency.”

 The “mercy” jury instruction alone forecloses the possibility of Nwrmcm-type error as it “eliminatejs] the risk that a death sentence will be imposed in spite of facts calling for a lesser penalty.” Post, at 206 (Souter, J., dissenting).

 In Blystone, the Pennsylvania statute authorized imposition of a death sentence if the jury concluded “that the aggravating circumstances out-weighted] the mitigating circumstances present in the particular crime committed by the particular defendant, or that there [werel no such mitigating circumstances.” 494 U. S., at 305.

 Contrary to JUSTICE Souter’s assertion, the Court’s decisions in Boyde and Blystone did not turn on the “predominance of the aggravators” in those cases. Post, at 205 (dissenting opinion). Rather, those decisions plainly turned on the fact that the mandatory language of the respective statutes did not prevent the sentencing jury from “considering] and giving] effect to all relevant mitigating evidence.” Blystone, supra, at 305. See also Boyde, 494 U. S., at 377 (“[T]he legal principle we expounded in Blystone clearly requires rejection of Boyde’s claim as well, because the mandatory language of [California jury instruction] 8.84.2 is not alleged to have interfered with the consideration of mitigating evidence”). The language of the Kansas statute at issue here no more “dietate[s] death,” post, at 205, than the mandatory language at issue in Boyde and Blystone. See Blystone, supra, at 305 (explaining that the Pennsylvania statute is not “ ‘mandatory’ as that term was understood in Woodson [v. North Carolina, 428 U. S. 280 (1976),] or Roberts [v. Louisiana, 428 U. S. 325 (1976),]” because “[d]eath is not automatically imposed upon conviction for certain types of murder”).

 Additionally, Marsh’s argument turns on reading §21-4624(e) in isolation. Such a reading, however, is contrary to “ ‘the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.’” Boyde v. California, 494 U. S. 370, 378 (1990) (citing Boyd v. United States, 271 U. S. 104, 107 (1926)). The constitutionality of a State’s death penalty system turns on review of that system in context. We thus reject his disengaged interpretation of § 21-4624(e).