**ORDERED** that the motion for summary judgment is **GRANTED;** it is further

**ORDERED** that the Defendant Property is **FORFEITED** to the Government; and it is further

**ORDERED** that the Clerk of Court shall **CLOSE** this case.

**UNITED STATES of America**

v.

**James DINKINS, et al.**

**Criminal No. JFM–06–0309.**

United States District Court, D. Maryland.

April 23, 2008.

Stephanie Agli Gallagher, Rod J. Rosenstein, Office of the United States Attorney, Baltimore, MD, for United States of America.

### MEMORANDUM

J. FREDERICK MOTZ, District Judge.

Darron Goods has filed a motion to suppress wiretap evidence. A non-evidentiary hearing on the motion was held on March 24, 2008. At the conclusion of the hearing, I expressed the tentative view that Goods'

motion should be granted.[1] By a letter dated April 2, 2008, the Government submitted several additional authorities that had not been cited prior to or during the hearing and requested that I issue a written order setting forth my final ruling and the reasons for the ruling. I adhere to the views I previously expressed, and I will grant Goods' motion.

### A.

On November 19, 2007, Baltimore City Circuit Judge John M. Glynn signed an order authorizing wiretap interception of a contraband cellular telephone being used by Goods while he was incarcerated in the Metropolitan Transition Center ("MTC") in Baltimore City.[2] The affidavit submitted by Detective Michael Baier in support of the wiretap established the following:

1. At approximately 11:15 p.m. on October 30, 2007, Alexander Robinson–El was shot and killed.

2. Within approximately six minutes of Robinson–El's murder, Goods (who is said to have been Robinson–El's best friend) received a call over his cell phone. Shortly thereafter, Goods placed a call to the telephone used by Robinson–El's girlfriend and informed her of the murder. As set forth in the affidavit, this information was based upon (a) interceptions of telephone calls between Cornell Booker, another inmate at MTC, to third parties that were lawfully monitored over the MTC inmate telephone system, and (b) an analysis of the toll records of Goods' cell phone.

3. In another lawfully monitored telephone call, Booker and a third party discussed that one Trevon Jefferson had killed Robinson–El, including some of the specific circumstances surrounding the crime. Booker told the third party that he planned to get in contact with Goods, either by phone or "out for rec."

Based upon these facts, Detective Baier averred that "there is probable cause to believe that ... [Goods' cell phone] has been used, is being used, and will continue to be used by ... Goods and other interceptees for the purpose of discussing" the murder of Robinson–El (aff. ¶ 10d) and that there is "probable cause that ... [Goods] is using [his cell phone] to discuss murder and related offenses" (*id.* at 19).[3]

---

Strunk and White so command. William

**1.** Many excellent writers, including some law clerks and former law clerks, take the position that an " 's" must be added to a name ending in "s" when using the possessive form. Strunk, Jr. & E.B. White, *The Elements of Style* 1 (3d ed. 1979). Others never add an " 's". There is also authority permitting what might be called a hybrid approach: adding an " 's" when the "s" in the possessor's name sounds like an "s" but omitting the "s" where (as here) the sound of the "s" in the possessor's name is "z." *The Chicago Manual of Style* § 6.30 (Univ. of Chi. Press, 14th ed. 1993).

For example, during the top of an inning at Camden Yards, "Markakis's catches" in right may be applauded while "Jones' throws" from center are cheered. This hybrid approach has the virtue of marrying the written word and the spoken tongue and contributes to the growth of English as a living language, unconstrained by archaic and inflexible rules.

The Supreme Court is divided on this important issue. *See Kansas v. Marsh*, 548 U.S. 163, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006) (Thomas, J.) (omitting "s" when using the possessive form of words ending in "s"); *id.* at 2541 (Souter, J., dissenting) (adding "s" universally to the possessive form of words ending in "s"); *id.* at 2529 (Scalia, J., concurring) (following the hybrid approach). Presumably, my adoption of the hybrid approach is subject to a deferential standard of review, even by those more classically inclined.

**2.** I want to make clear that although I am granting Goods' motion to suppress, I am not criticizing Judge Glynn for having signed the order authorizing the wiretap. I have no doubt that I would have signed the same order myself if it had been presented to me on an *ex parte* basis. It is only as a result of the adversary process initiated by Goods' suppression motion that I have focused upon the issue that leads to my suppression ruling.

**3.** Although the affidavit recites that Goods could not lawfully possess a cell phone at MTC, the wiretap order was not obtained on the ground that *any* communication over the phone constituted a crime. The Government

Similarly, in opposing Goods' motion to suppress, the Government argues that the wiretap was lawful because there existed probable cause to believe that evidence relating to the Robinson–El murder would be obtained by intercepting communications over Goods' cell phone.[4]

### B.

The Government obtained the wiretap under § 10–408 of the Courts and Judicial Proceedings Article of the Maryland Code.[5] Under § 10–408(c), before issuing an order authorizing a wiretap, a judge must determine that:

(i) There is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in § 10–406 of this subtitle;

(ii) There is probable cause for belief that particular communications concerning that offense will be obtained through the interception;

(iii) Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; and

(iv) There is probable cause for belief ... [t]hat the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of the offense....

In this case there is no question that the first and third of these elements have been met. Someone murdered Robinson–El,

and murder is an offense enumerated in § 10–406. Likewise, the facts recited in Detective Baier's affidavit fully supported Judge Glynn's determination that normal investigative procedures into the commission of the murder were unlikely to succeed. Further, although the question is closer, I also find that the second element had been met. Based upon the facts presented to him, Judge Glynn could properly determine that there was probable cause to believe that "particular communications" about the murder would be obtained through the interception of Goods' cell phone, particularly in light of the fact that Goods had been advised of the murder within six minutes of its commission.

I find, however, as a matter of law, that Judge Glynn could not determine that the fourth statutory element had been met on the basis of the facts presented in Detective Baier's affidavit. The "facilit[y] from which ... the wire, oral, or electronic communications ... [were] to be intercepted" was Goods' cell phone, and none of the facts asserted in Detective Baier's affidavit supported the determination that Goods' cell phone was "being used, or ... [was] about to be used, in connection with the commission of" Robinson–El's murder. Goods was not alleged to have been involved in the murder; to the contrary, he is alleged to have been a friend of Robinson–El and he was the person to break the news of the murder to Robinson–El's girlfriend.[6]

---

has also expressly disavowed reliance on this theory in opposing Goods' motion to suppress.

**4.** The intercepted communications the Government seeks to introduce into evidence in this case do not relate in any way to the murder of Robinson–El but to a different murder in which Goods allegedly was involved.

**5.** In all pertinent respects § 10–408 tracks the language of the comparable federal wiretap statute. *See* 18 U.S.C. § 2518(3).

**6.** Nothing in Detective Baier's affidavit suggests, and the Government does not contend, that the wiretap was placed on Goods' cell phone because there was probable cause to believe that Goods would be arranging a revenge killing of Robinson–El's murderer.

Of course, as the Government argues, it is not necessary that there be probable cause to arrest the person in control of the phone or other facility being wire tapped or even that there be probable cause to believe that that person is himself culpable. *See, e.g., United States v. Talbert,* 706 F.2d 464, 467 (4th Cir.1983); *United States v. McGuinness,* 764 F.Supp. 888, 900 (S.D.N.Y.1991). In this case, however, because neither Goods nor anyone else with access to Goods' cell phone was suspected of having been involved in Robinson–El's murder, there was no basis for believing that the phone would be used "in connection with the commission of" Robinson–El's murder.

The Government concedes as much. At bottom, its position is that the wiretap was lawful because probable cause existed to believe that relevant evidence about Robinson–El's murder could be obtained from intercepting Goods' cell phone. (*See, e.g.,* Gov't Opp'n Mem. at 7–8.) In support of this contention, the Government argued at the motions hearing that search warrants to obtain drugs or other contraband can properly be issued regardless of whether the owner or occupant of the premises to be searched was aware of their presence. There are two fallacies in this argument. First, search warrants for premises are not governed by the explicit requirements for obtaining an order authorizing a wiretap established by § 10–408(c). Second, in the hypothetical postulated by the Government, premises in which contraband is located may properly be characterized as "being used in connection with the commission" of the crime to which they relate because they are being used to conceal evidence of the crime.

The Government cites *United States v. Meling,* 47 F.3d 1546 (9th Cir.1995), and *United States v. Moody,* 762 F.Supp. 1491, 1498 (N.D.Ga.1991), in support of its position. Both of these cases did involve in-

stances in which the Government obtained orders authorizing wiretaps of telephones and rooms used by the defendants after the completion of the crimes of which they were suspected. However, although the defendants in *Meling* and *Moody* raised a number of issues challenging the wiretap orders, it does not appear that they argued that the orders were invalid because they failed to meet the "in commission of a crime" requirement. Moreover, at the most simplistic level, *Meling* and *Moody* might be said to represent paradigms of the popular maxim that "bad facts make bad law." In *Meling,* the defendant, after unsuccessfully attempting to poison his wife, had killed two other people by lacing packages of Sudafed with lethal amounts of cyanide and planting them on drugstore shelves in order to deflect suspicion from himself. In *Moody,* the defendant had assassinated by mail bombing Robert S. Vance, a judge of the United States Court of Appeals for the Eleventh Circuit, and Robert E. Robinson, a Savannah alderman and civil rights lawyer. In any event, to the extent that *Meling* and *Moody* do hold that a facility may be wiretapped solely for the purpose of obtaining evidence, I disagree with them. The statutory language (which *Meling* and *Moody* ignore) expressly requires that the facility be used in connection with the commission of crime for which the wiretap is being obtained.

The Government also cites *United States v. Webster,* 639 F.2d 174 (4th Cir. 1981), as a case where the court "appears to have recognized 'evidence gathering' as a legitimate use of a wiretap." (Gov't April 2, 2008 Letter.) That proposition is unremarkable. Of course wiretaps are used to obtain evidence. The specific question presented here, however, is whether the "commission of the offense" requirement was met. On this point, *Webster* supports the conclusion I have reached because (as the Government ap-

propriately acknowledges) the persons engaged in the wiretapped conversations themselves were involved in ongoing narcotics activity.

A separate order granting Goods' motion to suppress is being entered herewith.

## ORDER

For the reasons stated in the accompanying memorandum, it is, this 23rd day of April 2008

ORDERED that the motion to suppress wiretap evidence filed by Darron Goods is granted.