NOT DESIGNATED FOR PUBLICATION

No. 112,922

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MELISSA L. STEWART,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sumner District Court; R. SCOTT MCQUIN, judge. Opinion filed October 23, 2015. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Kerwin L. Spencer*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., GREEN and POWELL, JJ.

*Per Curiam*: Melissa L. Stewart appeals her conviction of one count of forgery following a jury trial. Her only claim on appeal is that she was denied a fair trial based on prosecutorial misconduct during closing argument. Finding no reversible error, we affirm the district court's judgment.

This case started out as a marital dispute between Melissa and Christopher Stewart that spilled over to criminal court with a forgery charge being filed against Melissa. In April 2013, the couple were married and living together, at least part of the time, in Wellington, Kansas. Christopher was doing repair work for Megan Rahe at a rental house

1

she owned. Melissa also was working for Rahe cleaning houses and doing other odd jobs. On April 16, 2013, Christopher finished his work for Rahe and was waiting for his final paycheck in the amount of $480.00. Melissa called Rahe that day and asked for Christopher's paycheck. Rahe refused to give her the check, but she agreed to leave two checks at her tax preparer's office, one check payable to Melissa for her work and one check payable to Christopher for his work. Rahe dropped the two checks off at her tax preparer's office, and she passed Melissa in the hallway as she was leaving. Rahe later noticed that the checks were cashed quickly because they cleared her bank the next day.

Christopher called Rahe on April 17, 2013, and asked her when he was going to get paid. Rahe told him that she had given his check to Melissa and it already had cleared the bank. After speaking with Christopher, Rahe called Melissa and told her that if she cashed Christopher's check, she needed to give him the money. Melissa told her that Christopher knew she was going to cash the checks and the money went to pay bills.

Christopher also spoke with Melissa about his paycheck, and she admitted that she had cashed it. Christopher told her: "'Well, I hope you didn't, because if you did I'm going to press charges, because that check was suppose[d] to pay the truck payment.'" Christopher later testified that he did not give Melissa permission to cash his check. Christopher requested that Rahe provide him a copy of the check. Rahe requested the bank to print a copy of the check, but the bank did not provide it to her until July.

Christopher and Melissa continued to have marital difficulties and ultimately separated for good. On July 19, 2013, Christopher requested the police to provide a civil standby at the residence he previously shared with Melissa so he could go inside the residence and retrieve his personal property. Officer Phillip Metzen of the Wellington, Kansas, police department was dispatched to the residence. While Christopher was retrieving his property, Rahe arrived and provided him with the copy of the check he had requested. After receiving the copy of the check, Christopher told Metzen that he wanted

2

to report a forgery. Christopher reported to Metzen that Melissa had signed his name on a payroll check that Rahe had issued, cashed it, and never gave him any of the money from the check. Christopher provided Metzen with a copy of the check.

Melissa arrived at the residence while Christopher was getting his property, and Metzen asked her about the check. She told Metzen that the check was a payroll check made out to Christopher from Rahe, and she had signed Christopher's name on the back of the check and cashed it at the Security State Bank in Wellington. Melissa told Metzen that at the time she cashed the check, she and Christopher were still living together some of the time and she needed the money to pay their bills. When Metzen told Melissa that a person cannot sign another person's name on a check, Melissa stated that she had showed Christopher the check, and he had given her permission to sign his name on the check.

Metzen later spoke with Christopher again, and he confirmed that he was living with Melissa off and on at the time the check was cashed. Christopher denied that he authorized Melissa to sign his name on the back of the check and said he had his own plans for the money from the check. Christopher told Metzen that Melissa had received her own check, and he did not know why she cashed his check or needed his money.

On August 23, 2013, the State charged Melissa with one count of forgery, a severity level 8 nonperson felony. The case proceeded to a jury trial which began on August 5, 2014. Christopher, Rahe, and Metzen, among other witnesses, testified for the State. Melissa did not testify, and she did not call any witnesses at the trial. Melissa's attorney asserted during closing argument that Christopher had authorized Melissa to endorse his name on the check and use the money to pay their bills. After hearing the evidence, the jury found Melissa guilty of forgery as charged.

On October 16, 2014, the district court sentenced Melissa to 8 months' imprisonment but granted her probation with community corrections for 18 months. The

district court also ordered her to pay Christopher $480 in restitution. Melissa timely appealed her conviction.

On appeal, Melissa argues that she was denied a fair trial based on prosecutorial misconduct during closing argument. Specifically, she cites three instances in which she claims that the prosecutor impermissibly commented on her guilt. She also cites three instances in which she claims that the prosecutor impermissibly commented on the credibility of witnesses. Finally, Melissa claims that the cumulative effect of the prosecutorial misconduct denied her a fair trial.

Appellate review of an allegation of prosecutorial misconduct involving improper comments to the jury requires a two-step analysis. First, the court determines whether the prosecutor's comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. If misconduct is found, the appellate court must determine whether the improper comments compel reversal; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Armstrong*, 299 Kan. 405, 416, 324 P.3d 1052 (2014).

Melissa did not object at trial to any of the claimed instances of prosecutorial misconduct during closing argument. However, a claim of prosecutorial misconduct based on comments made during voir dire, opening statements, or closing argument that are not evidence will be reviewed on appeal even when a contemporaneous objection was not made at trial. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012). While the failure to object does not preclude appellate review of prosecutorial misconduct claims, it can factor into the court's analysis of the alleged misconduct. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009); *State v. Miller*, 284 Kan. 682, 720, 163 P.3d 267 (2007).

*Comments regarding Melissa's guilt*

Melissa claims that three instances of prosecutorial misconduct occurred during closing argument when the prosecutor told the jury that he personally thought Melissa was guilty. Prosecutors are given wide latitude to discuss the evidence presented at trial. *King*, 288 Kan. at 351 (quoting *State v. Ruff*, 252 Kan. 625, 634, 847 P.2d 1258 [1993]). But a prosecutor may not state his or her personal opinion about the guilt or innocence of the defendant because such a statement is not commentary on the evidence; it is a form of unsworn testimony. *State v. Peppers*, 294 Kan. 377, 399, 276 P.3d 148 (2012).

A prosecutor is allowed to make a "'directional'" statement, which "serv[es] 'as an opening for the prosecutor's upcoming summation of evidence.'" 294 Kan. at 399 (quoting *State v. Mann*, 274 Kan. 670, 689, 56 P.3d 212 [2002]). This allows the prosecutor to argue that the evidence demonstrates the defendant's guilt. However, the prosecutor should say something similar to "the evidence shows defendant's guilt," rather than expressing a personal opinion about the defendant's guilt. *Peppers*, 294 Kan. at 400.

1. "*The necessary signatures did not get there legally.*"

The first statement that Melissa argues was an impermissible statement of the prosecutor's opinion of her guilt is the following:

> "Now, the State must prove that the defendant committed the crime of forgery intentionally. The defendant acts intentionally when it is the defendant's desire or conscious objective to do the act or to cause the result complained about by the State. The result complained by the State is the defendant gets $480 the defendant's not entitled to get. The cashier gave the defendant $480 in trade for the check that the cashier would not of been able to give her that $48–$480 but for the fact that the necessary signatures are on the check. *The necessary signatures did not get there legally.*" (Emphasis added.)

The State argues that the prosecutor was not asserting his personal opinion that Christopher's signature on the check was not placed there legally. Instead, the State argues that the prosecutor was identifying a claim that the State had to prove for the jury to find Melissa guilty of forgery.

When the statement is viewed in context, it shows that the prosecutor was discussing the claims the State had to prove to allow the jury to convict Melissa of forgery. First, the prosecutor told the jury he had to prove that Melissa endorsed the check in a way so that it appeared that Christopher had actually endorsed it when she did not have the authority to do this. Second, the prosecutor told the jury that he had to prove that Melissa committed the crime of forgery intentionally. The prosecutor then discussed what it meant to act intentionally in terms of passing the forged check.

After a review of the context of the statement Melissa complains of, it is apparent that the statement was made as the prosecutor was explaining to the jury what the State was required to prove to convict Melissa of forgery. The prosecutor was not asserting his personal opinion that Melissa placed the signatures on the check illegally. Thus, the statement "[t]he necessary signatures did not get there legally" does not constitute prosecutorial misconduct.

2. "*It was her intention all along to get the $480 that she was not legally entitled to get, without Chris Stewart's permission, or without Chris Stewart's signature on the check.*"

The second statement that Melissa claims is prosecutorial misconduct because it stated the prosecutor's personal opinion on Melissa's guilt is the prosecutor's statement that "[i]t was her intention all along to get the $480 that she was not legally entitled to get, without [Mr.] Stewart's permission, or without [Mr.] Stewart's signature on the check." The full paragraph, including the statement the prosecutor made, is:

6

"As used in this instruction, the term intent to defraud means an intention to deceive another person and to induce such person in reliance upon such deception to assume, create, transfer – underline the word transfer in my mind – alter or terminate a right, obligation, or power with reference to property. Transfer possession ownership of the $480. Transferred from the teller to the defendant in this case. That is the proof of the intent to defraud. *It was her intention all along to get the $480 that she was not legally entitled to get, without Chris Stewart's permission, or without Chris Stewart's signature on the check.* She shows up to cash the check and has Chris Stewart's signature on the check, but Chris Stewart says that is not his signature, and he did not give Melissa permission to sign his name or cash the check." (Emphasis added.)

A statement that is alleged to be prosecutorial misconduct must be viewed as a whole and not in isolation. *State v. Brinklow*, 288 Kan. 39, 44, 200 P.3d 1225 (2009). As with the first statement complained about by Melissa, this second statement, when placed in context, shows that the prosecutor was discussing the claims the State had to prove, including intent to defraud. The prosecutor was not asserting a personal opinion about Melissa's guilt. We conclude this statement does not constitute prosecutorial misconduct.

3. "*I would submit that there's more than proof beyond a reasonable doubt that she had no authority to sign the check, and, that, therefore, she's committed each of the elements of forgery . . . .*"

The third statement that Melissa argues was an impermissible statement of the prosecutor's opinion of her guilt is the following:

"Well, is that the type of person that [it is] likely that she would have his permission to sign the check? I submit . . . *I would submit that there's more than proof beyond a reasonable doubt that she had no authority to sign the check, and, that, therefore, she's committed each of the elements of forgery . . . .*" (Emphasis added.)

This was the prosecutor's final statement as he summed up the evidence and asked the jury to return a verdict of guilty. Melissa argues that the language "I would submit" is

7

impermissible prosecutorial misconduct because it demonstrates the prosecutor's personal opinion about Melissa's guilt without sufficient directional language to connect the statement to the evidence.

When placed in context, the prosecutor's statement was tied to the evidence and did not constitute an expression of a personal opinion on Melissa's guilt. The prosecutor was summing up all the evidence that had been presented by the State during the trial and was focusing on the key issue of whether Melissa had authority to cash the check. This is certainly not the same thing as the prosecutor saying "I believe the defendant is guilty."

It would have been better for the prosecutor to say "*the evidence shows* that there's more than proof beyond a reasonable doubt that [Melissa] had no authority to sign the check, and, that, therefore, she committed each of the elements of forgery." But the fact that the prosecutor said "I would submit" in the final sentence of a lengthy closing argument does not constitute misconduct. This statement is no different than several comments made by defense counsel during closing argument. For instance, at one point during the closing argument defense counsel stated, "*I don't know* on the authorization charge how you can find beyond a reasonable doubt that Mr. Stewart did not authorize Mrs. Stewart to cash his check." (Emphasis added.) Later, defense counsel stated, "*I think* clearly if you refer to the written statement that [Christopher] made, there was nothing in there about him not authorizing Melissa not to cash this check." (Emphasis added.) Defense counsel summed up his closing argument by saying, "*I don't think* you can find beyond a reasonable doubt that my client is guilty, and I would ask you to consider that as you're weighing all this evidence." (Emphasis added.) Both the prosecutor and defense counsel tied their closing arguments to the evidence, and neither one committed misconduct by making personal comments regarding Melissa's innocence or guilt.

8

*Comments on the credibility of witnesses*

Melissa also argues that the prosecutor committed misconduct during closing argument when he made three comments regarding her credibility and Christopher's credibility. A prosecutor is entitled to comment on the credibility of a witness as long as the statement is tied to the evidence presented at trial. However, prosecutors are prohibited from providing their personal opinion of a witness' credibility to the jury. *State v. Bridges*, 297 Kan. 989, 1013, 306 P.3d 244 (2013). These comments are prohibited because they are unsworn, unchecked testimony. 297 Kan. at 1013.

However, a prosecutor can argue that certain testimony is not believable when a case turns on which of two conflicting stories is true. *State v. Ortega*, 300 Kan. 761, 775, 335 P.3d 93 (2014). A prosecutor may make an argument about a witness' motivation for being untruthful if the argument is based on evidence and reasonable inferences drawn from the evidence and the prosecutor does not provide his or her personal opinion about a witness' credibility or accuse a witness of lying. 300 Kan. at 776.

1. "[*T*]hat's *in my opinion even more likelihood why Chris would not of trusted her to make payments . . . .*"

The first statement Melissa complains about is the following:

"So the fact that he wanted to use the money to pay for a truck payment is some evidence that he would not of [*sic*] authorized her to cash the check. And there's no testimony that, 'Well, she knew how to pay for the truck payment or anything like that.' On the contrary, it's Chris's statement that he had his set of bills for him to pay, and she had her sets of—set of bills for her to pay. And that there's been actually two different divorce cases that have been filed between the two of them. *And if in fact there's an ongoing disputes between the two, that's in my opinion even more likelihood why Chris would not of* [*sic*] *trusted her to make payments where he intended to payments to be made.*" (Emphasis added.)

9

Melissa argues that this statement constitutes prosecutorial misconduct because it violated the holding of *State v. Brown*, 300 Kan. 542, Syl. ¶ 7, 331 P.3d 781 (2014), prohibiting a prosecutor from offering his or her personal opinion on the defendant's credibility. The State argues that this comment does not constitute prosecutorial misconduct because it "was tethered to the facts and within the wide latitude of the prosecutor to argue reasonable inference."

Because this case turned on which of the two conflicting stories was true, the prosecutor was allowed to make an argument about the credibility of a witness that was based on reasonable inferences of the evidence presented. *Ortega*, 300 Kan. at 775. Here, the statement Melissa complains of was an argument based on reasonable inferences of the evidence presented. The prosecutor made the statement during a discussion of why Christopher would not have authorized Melissa to make his truck payment. After the prosecutor noted the lack of evidence that Melissa knew how to make the truck payment and the testimony that Melissa and Christopher had their own separate bills they each paid, he stated that the ongoing disputes between the two made it more likely Christopher would not have trusted Melissa to pay the bills he needed to pay.

The prosecutor should not have used the words "in my opinion." But it is clear from the context of the entire argument that the prosecutor was not offering his personal opinion on Christopher's credibility. The prosecutor was making the point, based on the evidence, that Christopher would not have trusted Melissa to make the truck payment. We find that this statement, taken in context, did not constitute misconduct.

2. "*And why is she lying when later she told Megan and Officer Metzen she had his permission to sign his check?*"

The second statement Melissa complains of is the prosecutor's statement, "And why is [Ms. Stewart] lying when later she told [Rahe] and Officer Metzen she had [Mr.

10

Stewart's] permission to sign his check?" Melissa argues that this is prosecutorial misconduct because a prosecutor cannot suggest that the defendant is lying. The State argues this comment is permissible because it was tethered to the facts.

We note that Melissa did not testify at the trial. Thus, the prosecutor was not arguing that Melissa lied to the jury. Instead, the prosecutor asked the jury the rhetorical question of why Melissa lied to Rahe and Metzen. Nevertheless, Kansas has a firm rule prohibiting a prosecutor from accusing the defendant of lying. See *Ortega*, 300 Kan. at 776. We conclude that this statement by the prosecutor constituted misconduct.

3. "[*T*]here's *no other reason that the delay should be looked at as some indication that [Christopher] was less than honest when he says [Melissa] didn't have my permission to sign the check.*"

The final statement Melissa complains about is the following:

"Why—why didn't he just call in the first place and say I want—I need to make a report on a forgery? Well, that was explained in Megan Rahe's testimony that she actually came over and gave him the check the same day whenever the officer was there to—for the civil standby, so halfway through the civil standby Megan shows up, has this check, and then Chris shows it to the officer and reports the incident. *So that answers that question and there's no other reason that the delay should be looked at as some indication that he was less than honest when he says she didn't have my permission to sign the check.*" (Emphasis added.)

Melissa argues that this statement constitutes misconduct because the prosecutor did not say "the evidence shows" before making the italicized statement. She argues that the prosecutor's statement that there was no "indication that [Christopher] was less than honest" shows the prosecutor's personal opinion of Christopher's credibility. The State argues that this statement was permissible because it was tethered to facts that showed the jurors why they should have believed Christopher's testimony over Melissa's story.

11

This comment was a permissible argument based on reasonable inferences from the evidence about why Christopher's testimony was credible. The prosecutor made this statement while he was countering defense counsel's argument that the jury should not believe Christopher because he did not report the forgery for 3 months. The prosecutor's counterargument was that Christopher waited until he received a copy of the check to report the forgery. This statement does not constitute prosecutorial misconduct because it was not a statement of the prosecutor's personal opinion of Christopher's credibility.

*Does any misconduct constitute reversible error?*

We have identified only one instance of prosecutorial misconduct when the prosecutor asked the jury the rhetorical question of why Melissa lied to Rahe and Metzen. We have also noted that in one instance the prosecutor should have avoided saying "I would submit," and in another instance the prosecutor should have avoided saying "in my opinion," but we did not find these statements to constitute misconduct.

Because we have found at least one instance of prosecutorial misconduct, we must proceed with the second step of the analysis to determine whether the improper comment compels reversal; that is, whether the statement prejudiced the jury against Melissa and denied her a fair trial. See *Armstrong*, 299 Kan. at 416. In the second step of the two-step analysis, the appellate court considers three factors: (1) whether the misconduct was gross and flagrant, (2) whether the misconduct showed ill will on the prosecutor's part, and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of the jurors. *State v. Williams*, 299 Kan. 509, 540, 324 P.3d 1078 (2014).

The prosecutor's rhetorical question of why Melissa lied to Rahe and Metzen did not constitute gross and flagrant misconduct. The statement was isolated and occurred only once in the course of the prosecutor's lengthy closing argument. Moreover, while the

prosecutor impermissibly implied that Melissa was lying, he immediately provided the jury with arguments of why the evidence supported Christopher's testimony and not Melissa's story.

However, the prosecutor's comment was a violation of a longstanding rule. Since at least 2000, the Kansas Supreme Court has recognized that it is inappropriate for a prosecutor to accuse a defendant of lying. See *State v. Pabst*, 268 Kan. 501, 506, 996 P.2d 321 (2000). The fact that the prosecutor violated a longstanding rule supports a finding by this court that the misconduct showed ill will on the prosecutor's part. On the other hand, the isolated nature of the improper conduct supports a finding of no ill will. Further, the improper conduct was not made in violation of a court order. Melissa did not object to this comment, and the prosecutor had not received any prior admonitions about commenting on the credibility of Melissa. While the failure to object does not preclude appellate review of prosecutorial misconduct claims, it can factor into this court's analysis of whether the comments were made out of ill will. See *Miller*, 284 Kan. at 720.

The State presented substantial evidence to support the jury's conclusion that Melissa was guilty of forgery. Christopher's testimony was corroborated in large part by Rahe's testimony, making it reasonable for the jury to conclude that Melissa did not have Christopher's permission to endorse his name on the check. However, it cannot be said that the State's evidence was "overwhelming," and we make no attempt to find that the third factor overrides the first two factors in our analysis of reversible error. See *Williams*, 299 Kan. at 540-41.

Ultimately, the question we must decide is whether any improper comments made by the prosecutor prejudiced the jury against Melissa and denied her a fair trial. Upon reviewing the entire record, we find there is no reasonable possibility that any prosecutorial misconduct during closing argument affected the verdict in this case. The prosecutor's improper comment was isolated and couched within an extensive discussion

of the evidence presented. We note that the district court instructed the jury: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." The district court also instructed the jury: "Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions." Courts presume juries follow their instructions. *State v. Kettler*, 299 Kan. 448, 478, 325 P.3d 1075 (2014). Based on the entire record in this case, we conclude that Melissa was not denied a fair trial based on prosecutorial misconduct during closing argument.

Finally, we note that Melissa makes a separate argument that the cumulative effect of all of the instances of prosecutorial misconduct in this case denied her a fair trial. An evaluation of cumulative error is focused on the net prejudicial effect all the prosecutorial misconduct had on the jury's verdict. *State v. Kleypas*, 272 Kan. 894, 1088, 40 P.3d 139 (2001) *cert. denied* 537 U.S. 834 (2002), *overruled on other grounds State v.* Marsh, 278 Kan. 520, 534-35, 102 P.3d 445 (2004), *rev'd Kansas v. Marsh*, 548 U.S. 163, 126 S. Ct. 2516, 165 L. Ed. 2d 429 (2006). Here, as we have already noted, we have found only one instance of prosecutorial misconduct during the closing argument. A single error cannot constitute cumulative error. *Williams*, 299 Kan. at 566. Thus, Melissa is not entitled to any relief under her claim of cumulative error.

Affirmed.